John Williams was possessed of two negro boys, Arthur and Billy, and two negro women, Dinah and Nanny, and made his last will the 22nd of April, 1713. He willed his negroes, and all other goods and chattels, to be valued and appraised, and equally divided between his wife and three children, and that his wife should keep his children’s estates till they came of age; and died soon after making his will. After his death, the negro woman Nanny, had two children, Obey and James, and the negro woman Dinah, had a child named Essex. Anthany, the widow, married John Marston, who, supposing his wife to be with child, by his will dated the first day of December, 1719, devised these negroes, viz. Arthur, Will, Nancy, Essex, Obey, and James, to the child his wife was ensient of, and gave all the residue of his estate, real and personal, to his wife and her heirs for ever, she paying his debts, and the orphans’ estates in his hands; and died soon afterwards. But his wife did not prove with child, and the widow is married to her third husband, Parish, the defendant, and none of Williams’s children are of age, and the plaintiff as heir at law to Marston, the second husband, hath brought an action of detinue, for Arthur, Will, Essex, Obey and James, which are properly Williams’s estate, and for Nancy, which was Marston’s proper estate.
The plaintiff, as to the negroes that were Williams’s, cannot maintain an action of detinue, for by the will of Williams, they were to he equally divided between his wife and children, and until her part is ascertained by a partition, it is uncertain which of them is hers. Therefore, supposing her part vested in Marston, her second husband, and that it descended to the plaintiff as his heir at law, the plaintiff must know which of the negroes are his, to *2 support this action; for in detinue, the things demanded, must be certain, as in debt. But there is a stronger objection, and that is, to the plaintiff’s right to the thing demanded upon the will of his brother. The devise to the child in ventre sa mere never vested, because no child was born, but was for that reason void, and whatever was intended to have been given to this child if it had been bom, by law vested in the wife, to whom the residue of the estate was given. A residuary legatee, is in loco heredis and universal successor to the testator, and must have every tiling that is not given away by the will. Here was only an intention to give, but no gift for want of a person to take. Though in the case of Sprigg and Sprigg, 2. Vern. 394. it was admitted, that in the devise of the residue of a personal estate, if the legatee was dead at the time of making the will, the residuary legatee shall not have the benefit of that legacy, and that it should not fall into the residue, because nothing was intended to pass by that devise but the residue, after that and other legacies paid. Yet the principal case there, was for a legacy to Thomas Sprigg, if he came from beyond sea, and the Lord Keeper was of opinion, that the devise being contingent, and on a condition precedent, which never happened, was as if never given, and the residuary legatees should have the benefit of that legacy. So here the case of a devise in ventre sa mere is a contingent devise, for in reality the woman was not with child, and the intent of the testator appears plainly to be, that his wife should have all his estate if there was no child, taking notice of nobody but his wife, and the child he supposed she went with. And there is a great deal of reason and justice she should have it. For all the negroes except one, came by her, and she is chargeable with all his debts and the estates of the orphans, out of the residuary estate.
The court were of opinion that the plaintiff had no right to recover the five negroes that were Williams’s, and that the plaintiff should recover the negro that was Marston’s, as his heir at law.
Reported by Sir John Randolph.